Rosaria A. Suriano, Esq.
Mark A. Fantin, Esq.
**BRACH EICHLER, L.L.C.**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
Phone: (973) 228-5700
Fax: (973) 618-5951

Michael Nicodema, Esq.
**GREENBERG TRAURIG, LLP**
500 Campus Drive
Suite 400
Florham Park, NJ 07932-0677
Phone: (973) 360-7900
Fax: (973) 301-8410

*Attorneys for Plaintiff*
*Magnetic Products and Services, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAGNETIC PRODUCTS AND SERVICES, INC.,<br><br>    Plaintiff,<br><br>        v.<br><br>DEMAG SOLUTIONS, LLC, ESTATE OF RICHARD THORNE, MARY ELLEN FOLEY and JEREMY GROOVER,<br><br>    Defendants. | Civil Action No.<br><br><br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Magnetic Products and Services, Inc. ("Plaintiff" or "MPS"), by way of Complaint against Defendants Demag Solutions, LLC ("Demag"), the Estate of Richard Thorne ("Thorne"), Mary Ellen Foley ("Foley") and Jeremy Groover ("Groover") alleges as follows:

## NATURE OF THE ACTION

1. This is a copyright infringement action under 17 U.S.C. §101, *et seq.* and an action under the Defend Trade Secrets Act, 18 U.S.C. §1836 ("DTSA"), in connection with the Defendants' misappropriation of a circuit board for an auto degauss machine (the "Auto Degauss") developed and manufactured by MPS. The Auto Degauss, a machine used to demagnetize electric current and voltage and to remove stray currents and magnetization in metal and pipeline, contains complex power circuits, developed after decades of testing, both in the field and in-house, which are highly proprietary and are the trade secrets of MPS. Defendants also admittedly copied MPS's registered copyrighted schematic, bearing copyright number VAu-1-175-362 and protected under 17 U.S.C. §102(a)(5), an intricate and detailed design of the power control system and subsystems developed by MPS. Defendants then began manufacturing, selling and distributing an auto degauss machine using Plaintiff's copyrighted schematic, all in violation of the DTSA and 17 U.S.C. §101.

2. The function of MPS's Auto Degauss is to control high voltages and demagnetize various machinery and pipeline allowing for efficient and effective welding of metals and for other purposes.

3. To develop the product, Paul I. Nippes, P.E., an electrical engineer and the founder of MPS, conducted years of field studies and tests under dangerous conditions that had the potential for electric current and voltage. Through ceaseless study and testing, Mr. Nippes developed the Auto Degauss, a demagnetizer, which effectively controlled electric currents and voltage. The Auto Degauss product developed, manufactured and sold by MPS after decades of trial and error contains detailed and intricate components, all of which are trade secrets.

4. In 2003, MPS, having dominated this niche industry, hired defendant Mary Ellen Foley, as a business consultant to develop marketing and business strategies to grow and expand MPS. She was a trusted advisor, hired to expand the business of MPS.

5. Richard Thorne, now deceased, was an employee of MPS and an engineer. He was an apprentice to Mr. Nippes and worked closely with him and under his supervision to manufacture the demagnetizing Auto Degauss.

6. Defendant Groover, an engineer also previously employed by MPS who claims to be a co-founder of Defendant Demag, conspired with Foley and Thorne to misappropriate MPS's trade secret and purloin its customers.

7. Defendant Foley, after learning about MPS's business and product, conspired with Thorne and Groover to form Defendant Demag in order to directly and unfairly compete with MPS. Foley, Thorne and Groover stole MPS's copyrighted schematic and used it to develop and produce a demagnetizing machine. Demag markets and sells the demagnetizing machine and also purloined MPS's customers to do so.

8. Because of the highly technical and complex nature and intricate details of the power circuits used in the Auto Degauss, which took MPS decades to develop, Defendants Thorne, Foley and Groover purloined MPS's copyrighted schematics, critical to the production of the competing demagnetizing machine Demag manufactures and sells. Without the schematic, the development of a competing product by Demag, Thorne, Groover and/or Foley would have taken years and required significant costs. In fact, it would have been virtually impossible to replicate MPS's Auto Degauss without the copyrighted schematic.

9. Instead of spending decades and millions of dollars to research and develop their products, within months of purloining and copying MPS's schematic, Defendants created their infringing product, which uses MPS's proprietary trade secrets.

10. Thorne, now deceased, Foley and Groover copied MPS's proprietary and copyrighted schematic in order to create derivative works for Demag; that is, the schematic Demag used to produce the electronic demagnetizing equipment called the "Pipeline Demagnetization Bundle" (hereafter the "Infringing Equipment").

11. MPS has been and will continue to be substantially damaged by the Defendants' unlawful actions. MPS brings this action to enjoin and restrain the Defendants' unlawful conduct, and for damages for the harm it suffered and continues to suffer at the hands of the Defendants.

## THE PARTIES

12. Plaintiff MPS is a corporation organized under the laws of the State of New Jersey, with its principal place of business located at 2135 Highway 35, in Holmdel, New Jersey.

13. Richard Thorne began working for MPS in or around 1988. In or around August 2011, Mr. Thorne's employment with MPS terminated. Thereafter, Thorne and Foley formed Demag, at which time Thorne served as a principal of Demag until his death on January 26, 2015. Thorne was paid by Demag for his services. Thorne's estate is a Defendant in this action because of Mr. Thorne's conduct and because his estate is being probated in New Jersey.

14. Demag is a New Jersey limited liability company with a principal place of business located at 6 East 10th Street, Barnegat Light, New Jersey. Demag uses, sells, and leases electronic demagnetizing equipment, and specifically, a pipeline demagnetizer ("the Infringing Equipment").

BE:9260224.1/MAG102-271567

15. Defendant Foley is an individual residing at 6 East 10th Street, Barnegat Light, New Jersey and is also a member of Demag.

16. Defendant Groover is an individual residing at 58 Baron Court, High Bridge, New Jersey. Groover previously worked for MPS as an engineering technician and claims to be a co-founder of Demag responsible for field operations, sales and marketing. Upon information and belief, Groover is currently a consultant to Demag, having formed his own company to provide services to Demag.

## JURISDICTION AND VENUE

17. Exclusive subject matter jurisdiction over this matter exists pursuant to 17 U.S.C. § 101, *et seq.* and 28 U.S.C. §§ 1338(a) and 1331 and subject matter jurisdiction also exists pursuant to 18 U.S.C. § 1836 ("DTSA") and 28 U.S.C. § 1331.

18. Personal jurisdiction over Demag is proper because Demag transacts business within New Jersey, derives substantial revenue from intrastate and interstate commerce, and has engaged in conduct that has significantly and adversely affected the interests of MPS, a corporation with its principal place of business located in New Jersey.

19. Similarly, personal jurisdiction over the individual Defendants is proper because Defendants Foley and Groover reside in New Jersey and knowingly engaged, directly or indirectly, in the acts and conduct set forth herein, including but not limited to, unlawfully competing with MPS and in the case of Thorne, prior to his death, he admittedly copied MPS's copyrighted schematic to produce the Infringing Equipment for sale or lease by Demag in New Jersey. Thus, Thorne's estate is a party to this action.

20. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant Demag resides in this judicial district, a substantial part of the events or

omissions giving rise to the claim occurred in this judicial district, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

### FACTUAL RELEVANT TO ALL COUNTS

#### I. History of MPS

21.  MPS is a family owned business which Mr. Nippes incorporated in 1980.  The products developed and sold by MPS detect or remove stray current and magnetism in metal, mechanical equipment for customers in a wide variety of sectors, including petroleum refineries, petrochemical industries, ammonia plants, electrical utilities, paper mills, steel mills, aluminum processing plants, automotive industry, electrical machinery manufacturing plants, turbine and compressor manufacturing plants and natural gas compressor installers.  MPS also services customers located on all continents, except Antarctica.

#### II. Thorne's Employment with MPS

22.  Richard Thorne began working for MPS in or about 1988 as a Field Engineer to perform degauss services using MPS equipment and his employment ended in or about August 2011.

23.  The proprietary, copyrighted schematic used to create MPS's Auto Degauss was created by MPS in 1999.  The Schematic bears a copyright notice in favor of MPS and a legend prohibiting copying.

24.  Thorne had access to MPS's original schematic.  During the course of his employment, Thorne was also given access to MPS's ideas, concepts, product design drawings, Gerber files, parts lists, prototypes and computer files for the MPS products.  He was also given access to MPS's customer lists as a Product Technician and became familiar with MPS's marketing and pricing strategies.

BE:9260224.1/MAG102-271567

25. Thorne passed away on January 26, 2015 and this action is against his Estate. Prior to his death, Thorne conspired with and aided and abetted Defendants in the misappropriation and theft of MPS's trade secrets.

### III. Foley's Conduct

26. As a business consultant retained by MPS to help develop a business plan and to develop sales and marketing, Foley learned MPS's business and about its proprietary information.

27. During her involvement with MPS, Foley worked with Thorne and Groover and conspired with Thorne and Groover to plan and start a competing business using MPS's confidential and proprietary trade secrets.

28. Foley conspired with and aided and abetted Defendants in the misappropriation and theft of MPS's trade secrets and MPS's copyrighted schematics.

### IV. Groover's Conduct

29. In or about October 2007, Foley introduced Groover to MPS as a candidate for a Field Engineer position. Upon information and belief, Foley and Groover previously worked together in their former employment. Foley also represented to MPS that Groover had computer information technology expertise and could assist MPS to maintain its network server.

30. Based on Defendant Foley's recommendation, MPS hired Groover, as a field engineer. Groover was granted "administrator" level access to the MPS central computer server, which allowed Groover access to all of MPS's computer system files stored on its server after using MPS's password and login information.

31. Based on Groover's "administrator" rights to MPS's electronic files on its central server, Groover was in a position to access and to purloin MPS's confidential and proprietary information and trade secrets.

32. On his LinkedIn biography, Groover identifies himself as a co-founder of Demag and he states that he was responsible for field operations and sales and marketing from May 2013 through 2016. Upon information and belief, Groover is a "Pipeline Technician" and started his own business which provides services to Demag.

### V. MPS's Schematic and Thorne's Admitted Copying of the Schematic

33. Thorne, Foley and Groover purloined MPS's proprietary information and copyrighted schematic and formed Demag to directly compete with MPS. In September 2013, MPS commenced an action against Demag in the Superior Court of New Jersey entitled <u>Magnetic Products and Services, Inc. v. Demag Solutions, LLC, et al.</u>, Docket No. UNN-C-89-13 (the "State Court Action").

34. The State Court Action does not allege claims under 17 U.S.C. §101, *et seq.*, as this Court has exclusive jurisdiction over these claims, nor does the State Court Action allege claims under the DSTA, a federal statute.

35. Defendants admittedly stole MPS's schematic because they could not have produced, sold or leased the Infringing Equipment, much less any electronic demagnetizing equipment, without directing, relying on, and/or exploiting Thorne's access to and copying of the Schematic.

36. As stated, MPS obtained copyright registration pursuant to 17 U.S.C. §102(a)(5) for the Schematic, bearing registration number VAu-1-175-362.

37. MPS is the sole and exclusive owner of the registered copyright in the Schematic, which consists of material that is wholly original and creative and which constitutes copyrightable subject matter under the copyright laws of the United States, 17 U.S.C. § 101, *et seq.* MPS has duly complied with the provisions of the copyright laws of the United States and has secured exclusive rights, title and privileges in and to the Schematic.

### VI. MPS's Trade Secrets and Confidential Information

38. As a result of their improper actions, Defendants have gained an unfair competitive advantage over MPS in the market as they were not required to fund the extensive research and design costs that MPS continuously incurred during its over forty (40) years of product development.

39. MPS takes steps to protect its confidential information and trade secrets by requiring its employees, to sign agreements that require them to maintain confidentiality during and after their employment and prohibiting them from disclosing confidential information and trade secrets to third parties or competitors.

40. MPS stored confidential and proprietary information and trade secrets in computer files on its central server for the MPS computer system, which could not be accessed without an MPS generated password and login.

### VII. Harm to MPS

41. In order to produce its sophisticated, proprietary, electronic demagnetizing equipment, MPS had over decades, invested substantial working capital in creating its proprietary, technical drawings, such as the copyrighted Schematic.

42. Defendants, acting in concert, instead of creating from whole cloth any design documentation, much less any sophisticated electronic schematics in order to produce electronic

demagnetizing equipment, simply directed, relied on, exploited, copied, and/or alternatively have made derivative works, of the copyrighted Schematic that remained in Defendants' possession post-employment.

43. By copying, or alternatively, making derivative works, of the Schematic, Defendants have damaged MPS and gained an unfair, indeed instantaneous, competitive advantage in the market in lieu of the time and capital needed in funding research and development costs, such as those that MPS had continuously incurred during forty (40) years of development work in connection with its proprietary equipment.

44. MPS has suffered losses of and declines in sales of its sophisticated, proprietary electronic demagnetizing equipment and related services as a result of the Defendants' admitted and illegal acts.

## COUNT ONE
## (COPYRIGHT INFRINGEMENT)

45. The prior allegations above are incorporated by reference in this Count One as if fully restated herein.

46. Defendants attempted to copy and/or copied, or alternatively made derivative works of, the Schematic in order to produce the Infringing Equipment.

47. MPS did not authorize, license, or grant permission to Defendants to copy or to make derivative works of the Schematic.

48. Defendants have profited and will continue to profit from such illegal copying of, or alternatively making derivative works from, the Schematic.

49. Defendants' attempting to copy and/or copying of, or alternatively making derivative works from, the Schematic was willful, intentional, and in flagrant disregard of MPS's lawful rights, even in the face of the legend on the Schematic that was drawn by Thorne.

50. Defendants have been on actual notice of infringement of MPS's rights in the Schematic since at least as early as December 2014 and, notwithstanding such notice, have continued to engage in infringing activity.

51. Defendants' acts of infringement have caused and will continue to cause MPS substantial and irreparable injury for which MPS is entitled to receive copyright infringement damages.

52. MPS has no adequate remedy at law to compensate it for all the harm that has been caused and will continue to be caused by Defendants' wrongful acts unless those acts cease immediately.

**WHEREFORE**, MPS demands judgment against Defendants, jointly and severally, as follows:

(a) A permanent injunction to prevent and restrain Defendants, including Demag, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the injunction order by personal service or otherwise, from infringing MPS's copyright pursuant to 17 U.S.C. § 502;

(b) An Order for the seizure, impoundment and/or destruction of any and all infringing articles, including the Schematic, any and all units of Infringing Equipment (including parts therefore and work in process for the production thereof), MPS's product specifications, technical drawings/plans, Gerber files, confidential information, trade secrets, computer software, computer hardware, and any infringing copies thereof, pursuant to 17 U.S.C. § 503;

(c) Actual and compensatory damages pursuant to 17 U.S.C. § 504;

(d) Disgorgement of Defendants' profits pursuant to 17 U.S.C. § 504;

(e) Pre- and post-judgment interest, reasonable attorneys fees and costs of suit; and

(f) Such other and further relief as the Court deems just and equitable.

## COUNT TWO

### (VIOLATION OF THE DTSA)

53. The prior allegations above are incorporated by reference in this Count Two as if fully restated herein.

54. As stated, MPS owns and possesses certain confidential, proprietary and trade secret information and drawings.

55. This confidential, proprietary and trade secret information relates to products and/or services used in, and/or intended for use in, interstate or foreign commerce.

56. The actions of Defendants as described above constitute violations of one or more provisions of the DTSA.

57. The DTSA provides, in relevant part:

> An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

[18 U.S.C. § 1836(b)(1)].

58. The DTSA provides that "a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable…"  18 U.S.C. § 1836(b)(3)(A).

59. MPS's trade secrets derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable to others in the demagnetization industry.  Such trade secrets are extremely valuable to MPS, crucial to the operation of MPS's business, and if available to others, would enable others to unfairly compete with MPS to MPS's detriment.

60. The MPS trade secrets are used in connection with MPS's products and services.

61. As stated, MPS implemented and continues to implement reasonable commercial restrictions to ensure that the MPS trade secrets maintain their secrecy.

62. By engaging in the conduct described above, Defendants, individually or collectively, have intentionally, willfully and maliciously misappropriated, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of MPS, and will continue to do so.

63. The aforementioned collective acts of the Defendants constitute misappropriations under the DTSA.

64. Defendants will, if not permanently enjoined by the Court, continue their acts and benefit from their misappropriation, causing MPS irreparable harm, damage and injury.

**WHEREFORE**, MPS demands judgment against Defendants, jointly and severally, as follows:

(a) A permanent injunction to prevent and restrain Defendants, including Demag, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the injunction order by personal service or otherwise, from directly or indirectly, revealing, misappropriating, disclosing and/or requesting anyone to disclose any trade secret or confidential or proprietary information or knowledge of MPS; from using in any way or aiding or requesting anyone to use any trade secret or confidential or proprietary information or knowledge of MPS; from retaining the benefits resulting from the use, disclosure or misappropriation of any trade secret or confidential or proprietary information or knowledge of MPS;

(b) Ordering Defendants to return to MPS any and all documents, drawings, client or employee information and tangible or intangible records of MPS in their possession, including all copies and adaptations of such drawings, documents, data, information and records;

(c) Exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

(d) Attorneys' fees and costs of suit pursuant to 18 U.S.C. § 1836(b)(3)(D); and

  (e)  Such other and further relief, injunctive or otherwise, as the Court deems just and equitable.

## COUNT THREE

## (AIDING AND ABETTING)

65. The prior allegations above are incorporated by reference in this Count Three as if fully restated herein.

66. Defendants had knowledge of the misappropriation of MPS's trade secrets and of the infringement of MPS's copyright.

67. Defendants acted in concert to attempt to commit and to commit the aforesaid unlawful acts by, *inter alia*, actively participating in, acquiescing in, aiding, abetting, helping to facilitate, helping to promote, being generally aware of their role as part of, otherwise acting to knowingly and substantially assist in said misappropriation of MPS's trade secrets and infringement of MPS's copyrights, and by failing to prevent these actions.

68. As a result of these actions and attempted actions, MPS has suffered and continues to suffer significant harm and substantial damages.

**WHEREFORE**, MPS demands judgment against Defendants, jointly and severally, as follows:

  (a)  A permanent injunction to prevent and restrain Defendants, including Demag, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the injunction order by personal service or otherwise, from directly or indirectly, revealing, misappropriating, disclosing and/or requesting anyone to disclose any trade secret or confidential or proprietary information or knowledge of MPS; from using in any way or aiding or requesting anyone to use any trade secret or confidential or proprietary information or knowledge of MPS; from retaining the benefits resulting from the use, disclosure or misappropriation of any trade secret or confidential or proprietary information or knowledge of MPS; and/or from infringing MPS's copyright pursuant to 17 U.S.C. § 502;

(b)     Ordering Defendants to return to MPS any and all documents, drawings, client or employee information and tangible or intangible records of MPS in their possession, including all copies and adaptations of such drawings, documents, data, information and records;

(c)     An Order for the seizure, impoundment and/or destruction of any and all infringing articles, including the Schematic, any and all units of Infringing Equipment (including parts therefore and work in process for the production thereof), MPS's product specifications, technical drawings/plans, Gerber files, confidential information, trade secrets, computer software, computer hardware, and any infringing copies thereof, pursuant to 17 U.S.C. § 503

(d)     Exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

(e)     Attorneys' fees and costs of suit pursuant to 18 U.S.C. § 1836(b)(3)(D); a

(f)     Actual and compensatory damages pursuant to 17 U.S.C. § 504;

(g)     Disgorgement of Defendants' profits pursuant to 17 U.S.C. § 504;

(h)     Pre- and post-judgment interest; and

(i)     Such other and further relief, injunctive or otherwise, as the Court deems just and equitable.

## **COUNT FOUR**

### **(CIVIL CONSPIRACY)**

69.     The prior allegations above are incorporated by reference in this Count Four as if fully restated herein.

70.     Defendants have conspired to wrongfully and unlawfully cause harm to MPS.

71.     As a result of their actions and attempted actions, MPS has suffered and continues to suffer significant harm and substantial damages.

**WHEREFORE**, MPS demands judgment against Defendants, jointly and severally, as follows:

(a) A permanent injunction to prevent and restrain Defendants, including Demag, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the injunction order by personal service or otherwise, from directly or indirectly, revealing, misappropriating, disclosing and/or requesting anyone to disclose any trade secret or confidential or proprietary information or knowledge of MPS; from using in any way or aiding or requesting anyone to use any trade secret or confidential or proprietary information or knowledge of MPS; from retaining the benefits resulting from the use, disclosure or misappropriation of any trade secret or confidential or proprietary information or knowledge of MPS; and/or from infringing MPS's copyright pursuant to 17 U.S.C. § 502;

(b) Ordering Defendants to return to MPS any and all documents, drawings, client or employee information and tangible or intangible records of MPS in their possession, including all copies and adaptations of such drawings, documents, data, information and records;

(c) An Order for the seizure, impoundment and/or destruction of any and all infringing articles, including the Schematic, any and all units of Infringing Equipment (including parts therefore and work in process for the production thereof), MPS's product specifications, technical drawings/plans, Gerber files, confidential information, trade secrets, computer software, computer hardware, and any infringing copies thereof, pursuant to 17 U.S.C. § 503

(d) exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

(e) Attorneys' fees and costs of suit pursuant to 18 U.S.C. § 1836(b)(3)(D); a

(f) Actual and compensatory damages pursuant to 17 U.S.C. § 504;

(g) Disgorgement of Defendants' profits pursuant to 17 U.S.C. § 504;

(h) Pre- and post-judgment interest; and

(i) Such other and further relief, injunctive or otherwise, as the Court deems just and equitable.

Dated: August 7, 2017

**BRACH EICHLER, L.L.C.**
*Attorneys for Plaintiff*
*Magnetic Products and Services, Inc.*

By: s/ Rosaria A. Suriano
    Rosaria A. Suriano, Esq.

**GREENBERG TRAURIG, LLP**

By s/ Michael Nicodema
Michael Nicodema, Esq.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable pursuant to *Fed. R. Civ. P.* 38.

Dated: August 7, 2017

**BRACH EICHLER, L.L.C.**
*Attorneys for Plaintiff*
*Magnetic Products and Services, Inc.*

By: s/ Rosaria A. Suriano
Rosaria A. Suriano, Esq.

**GREENBERG TRAURIG, LLP**

By s/ Michael Nicodema
Michael Nicodema, Esq.

**CERTIFICATION UNDER *L. Civ. R.* 11.2**

I, ROSARIA A. SURIANO, hereby certify that I am a member in the law firm of Brach Eichler, L.L.C., attorneys for Plaintiff Magnetic Products and Services, Inc. in this matter, and that the matter in controversy in this case is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, except for a matter entitled Magnetic Products and Services, Inc. v. Demag Solutions, LLC, et al., which is pending in the Superior Court of New Jersey, Union County Vicinage, Chancery Division, General Equity Part and bearing Docket No. UNN-C-89-13.

Dated: August 7, 2017

s/ Rosaria A. Suriano
Rosaria A. Suriano